IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| TRAVIS E. MERCHANT, | ) |
| | ) |
|     Debtor. | ) Bankruptcy No. 18-01599 |
| ---------------------------------------------- | |
| CHARLES A. KOHN and | ) |
| K & S DESIGNS, | ) Adversary No. 19-09010 |
|     Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| TRAVIS E. MERCHANT, | ) |
|     Defendant. | ) |

## TRIAL RULING

This matter came on for trial in Sioux City. Wil Forker appeared for Debtor Travis E. Merchant ("Debtor"). Jeffrey Myers appeared for the Plaintiff Charles A. Kohn and K & S Designs ("Plaintiffs"). The Court received evidence, heard argument, and took the matter under advisement. The Court gave the parties the opportunity to file post-hearing briefs. This is a core proceeding under 28 U.S.C. §157(b)(2).

## STATEMENT OF THE CASE

Plaintiffsse Charles A. Kohn and K & S Designs filed this adversary case against Debtor Travis E. Merchant alleging fraud under 11 U.S.C. §523(a)(2).

Plaintiffs provided Debtor with a credit card to use for expenses while Debtor was working under Charles Kohn and K & S Designs. Plaintiffs assert Merchant fraudulently charged around $53,064.12 on the Chase Credit Card. Plaintiffs argue this debt should be non-dischargeable under 11 U.S.C. § 523(a)(2). Debtor argues the charges were not fraudulent and Kohn expressly gave him permission to use the card for personal expenses because the parties had intertwined finances — with Kohn also owing Debtor for his services. Debtor states that Kohn allowed him to charge personal expenses and that they would later "settle up" and determine which one of them still owed the other. For the reasons set forth below, the Court finds Plaintiffs have failed to prove the debt is non-dischargeable.

## BACKGROUND AND FINDINGS OF FACT

Merchant and Kohn became acquainted sometime around 1995. They formed a business relationship and eventually established a close friendship. Kohn owns and operates a construction company, K & S Designs. He would often hire Merchant to perform services such as dirt work. K & S Designs is a general contracting company doing lawn care, irrigation, landscaping, fencing, and construction on homes. The company was founded in 1992 and has ten employees.

Merchant often worked digging and removing shrubbery for K & S Designs' larger projects. During trial, Kohn testified that Merchant was never an employee and only served as an independent contractor for K & S Designs. In 2015, Kohn

2

gave Merchant a Chase Mileage Plus Credit Card to use for business expenses. When Kohn first gave Merchant the Credit Card, Merchant used the card for a few personal expenses for his business. Kohn claimed he later told Merchant to use the card for business purposes only — mostly gas charges. Kohn also stated he never intended for Merchant to use the card for large equipment or personal expenses. He claims that permission was required for larger purchases. Kohn stated those parameters were a standard business practice for him whenever a company card was issued. It is undisputed that the card was Kohn's and Kohn received the statements. Kohn asserts Merchant fraudulently used the card beyond the scope of proper use, accruing over $50,000 in unauthorized charges.

During trial, Gordon Wilson, a current employee of K & S Designs, testified regarding his use of a company credit card. He stated that he did not need to inform Kohn of purchases unless they were for major transactions such as equipment. Wilson's card had a limit of $15,000, which appeared to be substantially lower than the card Merchant used. Wilson stated he was not allowed to use the card for personal expenses. He believed the charges were closely monitored by Kohn. Wilson's card was owned by Kohn, and the card listed Wilson's name. The statements for the card were sent directly to Kohn.

Shawn Hoffman, another employee of the company, also testified very similar to Wilson. Hoffman received a Chase Credit Card containing his name,

and the card was owned by Kohn. Kohn received the statements in the mail. Both employees stated that they kept track of the receipts while noting the project for which the card was charged.

Merchant testified he was treated differently by Kohn for several reasons. He first notes the two men that testified were employees and he was an independent contractor. The other employees received a biweekly paycheck. Merchant did not receive a regular income and had a unique arrangement with Kohn. He asserted he could use the credit card for personal expenses and he and Kohn would "settle up" — on which one owed the other money at a later date. He also differentiated himself from the other employees by noting his close friendship with Kohn. Merchant testified that Kohn almost always knew where he was, and that Kohn knew about almost all of the disputed charges. Merchant intended the credit card to be used as a method for Kohn to pay him for some of the work. Merchant stated that he would contact Kohn before making most charges and Kohn would reply "go ahead buddy" because he knew they would "settle up" their accounts later.

Victoria Merchant, Debtor's wife, also testified that she overheard phone conversations between her husband and Kohn. She stated that she had heard conversations about "settling up" later. She also heard her husband call Kohn and

4

ask permission for big purchases including equipment expenses and expenses for a trip to Las Vegas. Kohn denied the phone conversations.

Merchant's card seemed to have a significantly higher credit limit than other employees. Due to their friendship, Kohn did not express concern about financial issues with Merchant while the charging — that Kohn knew about — occurred.

Merchant argues that Kohn consented to Merchant's purchases both by phone and by continuously paying off the card. He did not cancel the card, remove it from Merchant's possession, or raise concerns. Kohn admits he did not closely examine credit card statements. Kohn says he set up an automatic payment for the statements. Kohn explained that he was short a bookkeeper and had no one looking at the credit card statements from late May 2018 until September 2018. He says he eventually noticed the charges after hiring someone for that position in September 2018.

It is undisputed that Merchant used the credit card for several personal expenses. The largest purchase being a $16,000 Bobcat for his business. He also charged a $1,500 Greenberg's Jewelry diamond ring for his wife. Merchant testified that he only used the card for three large items without specific permission: the diamond ring, a $492.20 Harley Davidson charge, and a $168 charge at the Hard Rock Casino.

All credit card charges from Kohn, Hoffman, and Merchant went to the same account ending in 5263. The statements combined all three of their charges without differentiating who made each purchase. The testimony of Kohn and Merchant conflicts on many points. There are some discrepancies in each one's version of events.

Once the relationship soured between Kohn and Merchant, Merchant had no other projects and no money to pay his bills. Merchant filed for Chapter 7 bankruptcy on November 20, 2018. Plaintiffs filed the adversary case on February 7, 2019, alleging false pretenses, false representation, and actual fraud under 11 U.S.C. § 523(a)(2). Plaintiffs ask the Court to find that their $53,064.12 claim is not dischargeable.

## CONCLUSIONS OF LAW AND ANALYSIS

Plaintiffs seek to have the debt excepted from Debtor's discharge under § 523(a), which provides:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. § 523(a). The party arguing for nondischargeability must prove the elements by a preponderance of the evidence. In re Koele, 2017 WL 6550495 (Bankr. N.D. Iowa Dec. 20, 2017). A preponderance of the evidence standard

6

requires the trier of fact to believe that the existence of a fact is more probable than it is nonexistence. In re Winship, 397 U.S. 358, 371–72, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); see also In re Jacobson, 532 B.R. 742, 746 (Bankr. N.D. Iowa 2015). Plaintiffs **must** meet this burden proving Merchant not only had fraudulent intent, but that they justifiably relied on representations made by him. See In re Grause, 245 B.R. 95, 102 (B.A.P. 8th Cir. 2000) ("What courts need to do is determine whether all the evidence leads to the conclusion that it is more probable than not that the debtor had the requisite fraudulent intent").

"In the Eighth Circuit the same five factors are applied to determine whether a debt is nondischargeable under 'false pretenses,' 'fraud' and 'false representation.'" Am. Nat'l Bank v. Lewis (In re Lewis), Bankr. No. 15-02519-ALS7, Adv. Pro. 16-30011-ALS, 2017 WL 2274946, at *2 (Bankr. S.D. Iowa May 24, 2017). Creditors, Kohn and K & S Designs must prove:

> (1) The debtor made a representation; (2) The debtor knew the representation was false at the time it was made; (3) The representation was deliberately made for the purpose of deceiving the creditor; (4) The creditor reasonably relied on the representation; and (5) The creditor sustained the alleged loss as the proximate result of the representation having been made.

Id. (quoting R & R Ready Mix v. Freier (In re Freier), 604 F.3d 583, 587 (8th Cir. 2010)). "Exceptions to discharge under § 523(a) are to be strictly and narrowly construed against the creditor and liberally in favor of the debtor to facilitate the debtor's fresh start." Hernadez v. Sulier (In re Sulier), 541 B.R. 867, 877 (Bankr.

7

D. Minn. 2015). Denying a debtor's discharge defeats the essential purpose of bankruptcy relief — a fresh start. See Korte v. United States, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001).

"To show intent to deceive, the creditor must prove that the debtor acted with the intent to induce the plaintiff to rely on the misrepresentation." In re Koele, 2017 WL 6550495 at *2; see also In re Sulier, 541 B.R. at 882. According to the Eighth Circuit Court of Appeals, "because direct proof of intent (i.e., the debtor's state of mind) is nearly impossible to obtain, the creditor may present evidence of the surrounding circumstances from which intent may be inferred." In re Van Horne, 823 F.2d 1285, 1287 (8th Cir. Iowa 1987) (abrogated on other grounds by Grogan v. Garner, 498 U.S. 279 (1991)).

Debtor's subjective intent and the reasonableness of a creditor's reliance should be judged in light of the totality of the circumstances. In re Koele, 2017 WL 6550495 at *3; In re Lewis, No. 15-02519-ALS7, 2017 WL 2274946, at *4 (Bankr. S.D. Iowa May 24, 2017). Many credit card cases turn on whether the debtor misrepresented the intent to repay and whether the creditor justifiably relied on that representation. In re Meseck, 284 B.R. 901, 906 (Bankr. N.D. Iowa 2002).

The Court first finds and concludes that Plaintiffs have failed to carry their burden of proof. As noted, both Kohn's testimony and Merchant's testimony is credible in part, and not as credible in other parts. The burden is on Plaintiffs,

8

however, to establish their case by the greater weight of the evidence. They did not do so. This is particularly true given the strong case law noting that exceptions to discharge are strongly construed against creditors.

The Court finds and concludes that Merchant's testimony is more credible on some critical issues. For example, Merchant has shown he did not intend to induce Kohn to rely on any misrepresentations. Conversely, Kohn has shown no such intent. The card was Kohn's and Merchant knew the statements were being sent to Kohn. Merchant believed Kohn would see everything. Even accepting Kohn's version — that he did not see most of the statements — it changes little on this key finding. Merchant did not know, or expect, that Kohn would fail to examine the statements. The statements were paid. Merchant believed he had an agreement with Kohn to settle things up later. Merchant seemed to believe Kohn consented to the charges by paying off the card while leaving it active. Kohn and Merchant had previously settled payments at later dates.

The Court rejects Kohn's suggestion that their relationship had turned sour earlier. If that were the case, it raises a serious question about why a high-limit card was issued to Merchant in the first place. Merchant's card had a higher credit limit than Wilson or Hoffman. Kohn even added to Merchant's limit at one point. While Kohn can be expected to allow purchases of fuel and other minor things for daily operations, Merchant did not have to report itemized receipts like the other

9

employees. He did keep some receipts, but it was for settling up accounts later. Due to their friendship, it appears Kohn did not have as much oversight over Merchant's transactions.

Kohn asserts it is not a normal business practice to allow an employee to deal with money owed by the company by charging for personal expenses. Merchant did not consider the personal purchases to be adding to any debt. He considered it to be "settling up" debt owed by Kohn to him. Kohn has failed to establish—on the record—what he argues here. Furthermore, the Court notes that if *reasonable* business practices control here, those practices would include oversight of charges. This is especially true under the circumstances, here, where there is a suggestion by Plaintiffs that debts owed have not been repaid in the past.

"A promise to perform in the future without the intent to perform at the time the promise was made constitutes fraud under § 523(a)(2)(A). In re Keole, 2017 WL 6550495 at *2; see also Merchants Nat'l Bank of Winona v. Moen (In re Moen), 238 B.R. 785, 791 (B.A.P. 8th Cir. 1999)). The debtor does not make a misrepresentation if he makes a promise with the intention of keeping it, but later changes his mind or refuses to carry out his intentions. In re Keole, 2017 WL 6550495 at *3 (citing Palmacci v. Umpierrez, 121 F.3d 781, 787 (1st Cir. 1997)).

Kohn argues that Merchant had the requisite intent to commit fraud because he purchased items with no intention of paying Kohn back for the charges. He

argues Merchant knew he was unable to repay Kohn for the charges at the time they occurred. Kohn believes that Merchant's inability to pay essentially trumps Merchant's arguments that he intended to pay the debts he was incurring. There was no evidence at all that Merchant knew he would not be able to repay Kohn. The Court finds, based on the parties' relationship, history, and previous friendship, that Merchant believed he would be able to repay Kohn for all debts if he had any after they "settled up."

In addition, some bankruptcy courts have also noted that mental illness can cause debtors to be overly optimistic about ability to pay their debts. See In re Fontenot, 89 B.R. 575, 581 (Bankr. W.D. La. 1988). In Fontenot, the debtor introduced testimony from his psychiatrist that debtor's manic states due to his bi-polar disorder impaired him to make irrational decisions on his ability to pay suppliers. Id. at 580-81. Here, there was no expert testimony regarding Merchant's mental state at the time. However, all parties agreed Merchant suffered from a manic episode from May 2018 until August 2018.

The Court can also consider "whether there were any 'red flags' that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations." In re Lewis, No. 15-02519-ALS7, 2017 WL 2274946, at *4 (citing Sinclair Oil Corp. v. Jones (In re

11

Jones), 31 F.3d 659, 662 (8th Cir. 1994). Kohn missed any possible "red flags" when he decided not to examine the credit card statements nor his accounts. There was a significant difference between the September 7, 2018 statement of $41,078.48 and the October 7, 2018 statement of $15,099.41. Minimal investigation of the statements could have easily led Kohn to find any "red flags" that could have existed.

As one court recognized in a somewhat similar case that "however distasteful, the losses suffered with the opening of the American Express card, are a direct result of well intentioned, but nonetheless poor judgment." In re Loomis, 558 B.R. 214, 219 (Bankr. S.D. Ohio 2016) (creditor gave debtor a credit card to use for expenses and then failed to open and review any of the statements mailed to his home).

Kohn also suggests Merchant may have "padded his hours to increase the bill" that Kohn owed him. There is no evidence to support this. Even if there was, Kohn did not provide any persuasive evidence that he had a zero-balance owing to Merchant.

The Court also notes that all of Kohn, Hoffman, and Merchant's charges went to the same account ending in 5263. Some of the charges Kohn ascribed to Merchant appear unlikely to be charges made by Merchant. For example, this Court does not believe Merchant made four different gas charges on the same day,

12

as Kohn suggests. There were also charges Kohn says belonged to Merchant that would place Merchant in both South Dakota and Las Vegas at same time. These discrepancies further show Plaintiffs did not provide a persuasive case to satisfy their burden proving the elements of fraud and damages.

Kohn did treat Merchant very well throughout their friendship. It appears that during the course of the friendship, the parameters of the credit card use may — at a minimum — have become unclear. Merchant may have overreached the agreement or interpreted it a little too broadly, but that does not mean that any such overuse constituted fraud. It appears more likely, that, if anything, Merchant thought he had more discretion to use the card than Kohn thought he gave him. After reviewing all the evidence and testimony presented, the Court does not believe Plaintiffs established Merchant had the requisite intent to defraud Kohn.

Plaintiffs have not met their burden proving Merchant fraudulently used the Chase Credit Card. They have not met their burden and have not proved Merchant used the credit card through false pretenses, fraud, or false representation under § 523(a)(2)(A). The Court holds that § 523(a)(2)(A) does not bar Debtor's discharge of his debt to Charles A. Kohn and K & S Designs.

## CONCLUSION

**WHEREFORE**, Plaintiffs' Complaint is DENIED and judgment is hereby rendered in favor of Defendant.

Dated and Entered: April 2, 2020

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE